## CHICAGO & EASTERN ILLINOIS R. R. Co.
### v.
### THOMAS McKNIGHT, Adm'r, etc.

1. NEGLIGENCE.—The court is of opinion that the position of appellee on the hand car was not that of trespasser, but that she was there by appellant's permission, and occupied the same position as the railroad section men, who were on the hand car for their own accommodation and not for any profit or business of the company; and that she was bound to use ordinary care, and is chargeable with the gross negligence of the section men.

2. SIGNALS, AT CROSSING.—The statute requiring the bell to be rung or the whistle sounded eighty rods before reaching a crossing, was intended to protect persons crossing, and has no reference to cases where the injury occurs to persons traveling on the railroad track.

APPEAL from the Circuit Court of Iroquois county; the Hon. FRANKLIN BLADES, Judge, presiding. Opinion filed August 7, 1885.

This suit was brought by the appellee to recover damages for the wrongful killing of Barbara McKnight, on Feb. 21, 1883, by the train of the appellant, which was a construction train with a caboose attached, and was backing from Milford to Wellington on the track of the railroad. The deceased, with James McDonald and William Coffee, section men on the appellant's road, and Thomas Connors, section foreman on the west end of the Wellington and Cissna branch of the road, and his son, Dennis Conners, section man under his father, was on a hand car going north from Wellington; just out from the station it collided with a construction train in charge of James Sevan, road master, which was backing south, meeting the approaching hand car, whereby the deceased and McDonald were instantly killed. The negligence charged in the first count of the declaration is that the appellant backed the train in such a careless and reckless manner, without any light attached thereto, and while the appellee was in the exercise of due care, that the injury was caused thereby; that the only light was a small red light which could not be seen by the de-

ceased in time to avoid collision. The second count charges the negligence of appellant to have been in not ringing the bell or sounding a whistle for the crossing, as required by the statute, averring that appellee was riding on the hand car with all due care, within less than eighty rods of the crossing of the public highway over said road.

It appears that deceased lived at a station called Lyford, situated on a branch of the road forming a junction with the main line about two miles north of Wellington, and kept a boarding house for boarding the railroad employes, among them some if not all the men who were on the hand car at the time of the accident, and on this day had come to Wellington on the hand car to receive their pay. The deceased received her pay from the appellant for the board of its employes direct, and came on the same errand with the men on the hand car. Lyford was some six miles off the main line. The construction train was in the habit every morning of starting out from Danville and running ahead first to Watseka, where they were repairing the track, where there had been a washout, and then on account of the ice and snow in the turntable preventing it from being turned, the train was backed to Danville and put off the men along the line at their homes, where they had gathered them up in the morning. The deceased and the other parties on the hand car were paid off in Wellington about five o'clock in the afternoon, and stayed around in Wellington till the time they started back, about seven o'clock, and after it had become dark.

The deceased, at the time of the accident, was standing up between Coffee and Thomas Conners, and McDonald had charge of the hand car on which they were all riding. There was a red light hanging down at the end of the caboose car, which was being propelled in rear of the engine and was the furthermost car going south and could be seen by the persons on the hand car. Just after the hand car started with all on board, all working the levers of the hand car, it was on a down grade just between the elevators where they started, and they were going at a good rate of speed, when Coffee noticed a red light away off in the distance from him and spoke of it

to McDonald and said "There is a red light; there is a train, I guess, coming agin us." He, McDonald, looked around and said it was the red light of the other train; he turned around and went to work and that was all Coffee knew till they were struck. The persons on the hand car made no attempt to stop it, but went on with increased speed and no more thought of it. Coffee saw the red light again just as they were going to strike. The men on the construction train testify that at the time of the collision it was not running to exceed ten or twelve miles per hour, while some of the by-standers testify it was running at a rate of thirty miles per hour. Some of the witnesses testify that Coffee said, "There is a train coming this way," and that McDonald said, "No, it's going the other way." McDonald had been working on railroads for the last twenty-two years. He worked on all parts of defendant's road and on the construction train. Conners had been working six or seven months. Coffee had been working seven or eight years. We think that the evidence will warrant the inference that the deceased was on the hand car going to Wellington and returning by permission of the road master the same as the men on the hand car, who were making the trip by permission and license of the appellant.

The evidence shows that these section men who were on the hand car, knew that it was their duty to expect a train at any time and they should keep a lookout at all times. They also knew the manner in which the construction train was run and the kind of light it had.

Mr. WILLIAM ARMSTRONG, for appellant; that deceased was a trespasser at the time of the accident, cited I. C. R. R. Co. v. Godfrey, 71 Ill. 500; I. C. R. R. Co. v. Hetherington, 83 Ill. 510; C., R. I. & P. R. R. Co., v. Todd, 91 Ill. 35; C., B. & Q. R. R. Co. v. Johnson, 103 Ill. 524.

The statute requiring the railroad company to ring a bell and sound a whistle, does not apply where persons are on a railroad track at a point aside from a highway crossing: 1 Thompson on Negligence, 452; Rohback v. Pacific R. R., 43, Mo. 187–194; Phil. & R. R. Co. v. Spearen, 47 Pa. St. 300;

O'Donner v. Prov. & W. R. R. Co., 6 R. I. 211; Ernest v. Hudson R. R. Co., 35 N. Y. 9; Elwood v. N. Y. Cen. & H. River R. R. Co., 4 Hun, 808; I. C. R. R. Co. v. Modglin, 85 Ill. 481; P. P. & J. R. R. Co. v. Siltman, 88 Ill. 529.

Messrs. Doyle, Morris & Pierson, for appellee; as to comparative negligence, cited C. & A. R. R. Co. v. Bonifield, 104 Ill. 225; G. & C. U. R. R. Co. v. Dill, 22 Ill. 264; I. & St. L. R. R. Co. v. Stables, 62 Ill. 316.

Lacey, P. J.   The appellant insists that the position of the appellee in being on the hand car was that of trespasser, but we are inclined to the opinion that the evidence warrants the belief that she was not a trespasser, but that she was there by its permission, and occupied the same position as the railroad section men who were on the hand car—that of persons riding on the hand car for their own accommodation, and on account of their own business, and not for any profit or business of the company.   These employes of the appellant who were on the hand car were not, at the time of the collision, in the line of their duty, as employes engaged in the business of the company, but were going on their own business the same as deceased.   The deceased then would occupy the same position, and would be chargeable with her own negligence as well as the negligence of those in whose care she had intrusted herself.

It is claimed that the deceased was bound under the circumstances to use extraordinary care; but in accordance with the view we take of the case it will not be necessary to decide that point, for at least she was bound to use ordinary care, and is chargeable with the negligence of McDonald and Conners and Coffee, who had control of the hand car, and in whose care she was, and who were not at the time the servants of the appellant, engaged in the line of their employment.   The going upon the railroad track, in the hand car, in the night time, knowing full well that a construction train was liable to meet them at any time, without taking great precaution to avoid collision, was an act of negligence; but

rushing on to the approaching train, after seeing the light on it, paying no heed to it, was an act of gross negligence, and would prohibit recovery. To approach with their hand car after having seen the light on the approaching train, without taking any precaution to investigate what the light was, whether the train was approaching or receding, was a most reckless act under the circumstances. By halting they could have soon discovered that the train was approaching and not departing. This, coupled with the fact, known to the parties, that ordinarily a person on a hand car can not hear the whistle or bell sounded on the approaching train, or the noise of its approach, should have made them still more cautious after seeing this light. Coffee and McDonald saw this light, and on their judgment that it was on a retiring train, at the same time knowing it was impossible to tell whether the train was approaching or not, dashed on reckless of consequences to their destiny. What reasonable man under such circumstances would have so acted? Alice Burling, Admx., v. Illinois Central Railroad Co., 85 Ill. 18, is very much in point in comparison of facts with this case, and there the Supreme Court held that the facts, if found in favor of appellant therein, would not support a verdict. In that case, as in this, it was a collision of an engine and train with a hand car, and in that case there was no head-light on the train, and there was no light on the hand car. While the court held that it was a high degree of negligence to run a train without a head-light, yet it also held that the deceased in that case was so grossly negligent that a verdict in favor of his administrator would have been set aside. But in the case before us the light of the approaching train was actually seen, but no attention whatever paid to it; the meeting of trains in the case above cited was almost certainly to have been anticipated. The statutory negligence claimed, that the bell was not rung or the whistle sounded eighty rods before reaching a crossing can not be set up by the appellees in this case. The deceased was not injured at the crossing, and does not come within the meaning of that statute. That statute was intended to protect persons in crossing, and has no reference to cases like

this, where the injury occurred on the railroad track of the appellant. The omission to comply with the statute can not, in a case like this, be set up as ground of recovery. W., S. L. & P. Ry. Co. v. Neikirk, 15 Bradwell, 172; Same v. Same, 13 Bradwell, 387. It is not necessary to pass on the instructions as the judgment must be reversed on the facts. The judgment is therefore reversed.

Judgment reversed.