### Rose Shea, Administratrix, Appellant, v. Chicago & Oak Park Elevated Railroad Company, Appellee.

### Gen. No. 18,193.

RAILROADS, § 678*—*when policeman stationed at graded crossing guilty of contributory negligence as a matter of law.* In an action against an elevated railroad company to recover for the death of a policeman stationed at a graded street crossing to warn the public of the approach of trains, the deceased having been struck by one of defendant's trains while he was standing on one of the tracks, plaintiff's evidence *held* to show that deceased voluntarily and unnecessarily assumed a dangerous position and was guilty of contributory negligence as a matter of law, though there was evidence tending to show that there was a custom to stop or reduce speed of trains on approaching the crossing.

Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the March term, 1912. Affirmed. Opinion filed November 24, 1913.

MORSE IVES, for appellant.

ADDISON L. GARDNER, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The appellant began this action against the appellee to recover damages under the statute for the death of Edward Shea. After all the evidence was submitted to the jury on a trial thereof the court instructed the jury to find the appellee not guilty and on the verdict so returned entered judgment.

It appears from the evidence that the appellee operated electric trains east and west over a double track railroad across Austin avenue, a north and south avenue, the dividing line between Chicago and Oak Park. To the north and adjacent to appellee's north track was a concrete wall sustaining the elevated tracks of the Chicago & Northwestern Railway Company, the

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

said tracks crossing over Austin avenue on a viaduct.
On the east side of Austin avenue was a station of the
appellee.  About thirty-five feet west of Austin avenue,
between the appellee's tracks, was a flagman's shanty.
West of the shanty a switch track extended from the
south track, near the shanty, about one hundred and
sixty-five feet in a northwesterly direction to the north
track.   The crossing was obviously a dangerous one
and the decedent, a police officer, had been stationed
there for about a year to warn and protect the public
in the use thereof.  On the day of his death he was
standing on the switch track when an eastbound train,
running about twenty miles an hour, without warning,
according to the plaintiff's evidence, struck and killed
him.

The question presented is, whether the decedent was,
as a matter of law, guilty of contributory negligence.
The evidence introduced by the plaintiff, to which the
trial court was, and we are limited in considering the
question, tended to show a custom to stop or reduce
the speed of all eastbound trains before crossing
Austin avenue.  The plaintiff contends that this cus-
tom being known to the decedent, he had a right to rely
thereon and act upon the assumption that no east-
bound train would cross Austin avenue without first
stopping or reducing its speed; and having a right to
rely thereon, it was an element in the consideration of
the question of contributory negligence that required
a submission thereof to the jury as a question of fact.

The defendant invokes the rule it claims controlling,
quoting from *Loettker v. Chicago City Ry. Co.*, 150 Ill.
App. 69:  "It has been held that a flagman stationed
at a crossing to look out for trains and give warning
of their approach, if run over by a train, cannot re-
cover," and authorities there cited.  Also that the
decedent was guilty of contributory negligence as a
matter of law in voluntarily and needlessly exposing
himself to danger as announced in *Austin v. Chicago,*

*R. I. & P. Ry. Co.*, 91 Ill. 35; *Wilson v. Illinois Cent. R. Co.*, 210 Ill. 603; *Belt Ry. Co. v. Skszypczak*, 225 Ill. 242; *Illinois Cent. R. Co. v. Curran*, 94 Ill. App. 182; *Chicago, R. I. & P. Ry. Co. v. Miller*, 135 Ill. App. 26, and quoting, *inter alia*, from the *Wilson* case, where the court held the plaintiff guilty of contributory negligence: "There was nothing to obstruct the view, or to prevent his seeing the approaching engine in time to avoid the injury, whatever its speed, or the negligence of the engineer to sound the whistle or ring the bell. There was no apparent necessity for his being upon the track at the time. His duties could have been as well performed from a secure position between the tracks. * * * There was nothing in the situation or circumstances attending the accident to exonerate or excuse appellant's manifest carelessness and indifference to the danger of his position on the track, when struck by the tender."

There may be a distinction between the case at bar and the flagman cases, where the flagman is an employe of the company operating trains over a crossing he is employed to guard. Even if there be such a distinction, we are of the opinion that under the latter contention urged by the defendant, the judgment must be affirmed.

In the case at bar it was the duty of the decedent to observe the approach of all trains; he had ample opportunity to see and hear the approach of the train in question; his work at the said crossing was dangerous; the ordinary care he was bound to exercise was commensurate with the danger; the position he had taken upon the track at the time of the accident was very dangerous, and, so far as the record shows, voluntary and not necessary in the performance of his duties. Had the custom been to stop all eastbound trains before crossing Austin avenue, it might have been the duty of the court to submit the case to the jury, for then the decedent would have reason to be-

lieve that an approaching train would stop before running over the crossing, and if then in a place of danger, he would have sufficient opportunity to take a position of safety.   But it is clear that it was the duty of the decedent to observe the approach of the train in question, whatever its speed.   It being his duty to observe the train, and not knowing, in view of the custom claimed, whether it would stop or only slow down before crossing Austin avenue, we fail to understand how he might voluntarily and apparently unnecessarily take a position on the track where he would be certain to be run over by an eastbound train, not stopping, whether it ran at the usual rate of speed or at a reduced rate of speed.   We think it manifest that the decedent failed to exercise ordinary care under all the circumstances; and under the rules of law mentioned he was guilty of negligence that proximately contributed to his death.

The judgment is affirmed.

*Affirmed.*